325-0233 Anthony Janito, Appellant v. Creekside Crossing Homeowners Association and K&R Landscaping, Inc. Appellees Mr. Fechner, if you're ready to proceed. Oh, before we get started though, Mr. Fechner, there was a request by the appellees in the case to split their time. I think the clerk had notified you that we needed a motion to do that. I would like to have some flexibility, but we have a time clock that doesn't quite fit your proposed scenario. So it will be 7 1⁄2 and 7 1⁄2 for your time split. Mr. Fechner, whenever you're ready. Thank you. And please the court. I'm Donovan Fechner. I represent the appellant, Anthony Janito. This appeals a straightforward question. Did the trial court err in granting summary judgment when the record contains substantial conflicting evidence about a central fact? Mainly whether a snow removal triggering event occurred? And the answer required reversal for several reasons. Three reasons. First, two witnesses, including the defendant, Dennis Goldsmith, testified that at least four inches of snow fell between February 8th and 11th in 2021. Mr. Goldsmith specifically testified that the portion of the driveway he had just shoveled on February 8th had more than two inches of new snow by February 11th. Second, K&R relied on weather data services that covered a 24 square mile area of playing field. It contains express disclaimers about its accuracy and provides no evidence that it measures specifically the conditions at this particular property. Third, the trial court resolved this factual dispute by saying, and I quote from the record, while there may have been snow drifts that accumulated higher than two inches, the weather service and what K&R goes off of was two inches or less of accumulation. That's weighing evidence and that's making a credibility determination. And that's what the jury is supposed to do, not what the courts are supposed to do on summary judgment. Therefore, under Adams v. Northern Illinois and Brayboy v. Avokit, when conflicting evidence exists, it must be construed strictly against the movement and the jury must decide which evidence to credit. As for the K&R landscaping issues, I'll direct my arguments to first. The trial court granted K&R summary judgment on the finding that no triggering snow event occurred, but that cannot stand for four independent reasons. First, and most fundamentally, there was a genuine issue of material fact about whether the two-inch triggering event did, in fact, occur. As I indicated before, Dennis Goldsmith testified that he shoveled his driveway on February 8th. Three days later, on February 11th, he testified that that portion had more than two inches of new snow on it. He further estimated that at least four inches, maybe more, of new snow fell during that period. My client, the appellant Anthony Genito, testified to four or five inches of packed snow in the area where he fell and six to seven inches of untouched snow in the grassy area. Christopher Genito testified that the driveway had ice with snow on top of it in February of 2011. K&R responded with Eric's weather service data, but that data has critical limitations. First, they expressed disclaimers that they say it's subject to the limitations of meteorology, based on reports received from the National Weather Service and cooperative observers, with no explanation as to who those observers are or where they're located. Second, the area covered is the entire village of Plainfield, encompassing approximately 24.3 square miles. There's no evidence that it specifically measured the conditions at 15725 Cove Circle or even within the Creek Crossing subdivision. Localized snow accumulations can vary significantly within such a large area. And while in Gatto v. Curtis, the appellate court recognized that weather data may be admissible, it's not conclusive. There, the court allowed testimony about wind velocity from Midway Airport, but emphasized there was only one piece of evidence to consider not dispositive. Here, we have the same situation. The weather data is just one piece of evidence. The eyewitness testimony is another. When they conflict, that's a classic jury question. The court improperly weighed that evidence, and that required reversal as well. The fact that it weighed the evidence at all. As the summary judgment hearing was held, the court stated that while there may have been snow just higher than two inches, the weather service and what K&R relied on showed two inches or less. And, Your Honors, that shows that the court chose to credit the weather service over the eyewitnesses. And that's weighing evidence that is making credibility determinations. The trial court believed that K&R should prevail, but that belief does not authorize a summary judgment where factual disputes exist. Also, I think the trial judge's conclusions were based in large part on the notion that it was a natural accumulation, right? In part, yes. Okay. So, is it your position that there's a contractual and, under these facts, tortious or duty and tort to take care of the driveway despite it being a natural accumulation? Or are you also disputing whether it was a natural accumulation? It's a contractual duty. K&R's contractual duty to remove snow does not disappear whether it's snow or ice. It had contracted for that and had it properly removed, the snow accumulation, the dangerous condition, the ice hidden underneath, would have been visible and avoidable. So, they did have a contractual duty to remove that snow. Okay. So, on the contractual duty, I think you had, I think in the briefs I read, I've read different numbers being thrown around. I'm seeing four to five inches. I'm seeing six to seven. But it looks like there was a heavy snowfall under your position the day before, right? Right. So, even if they have a contractual obligation, I mean, do they, does the contract specify that the snow be cleared away within X number of hours? I mean, if you have a heavy snowfall, I mean, they probably got a lot of houses to get to. Reasonable removal is a question for the jury. What the reasonable time to remove it and whether they breached their duty by not removing it within a reasonable period of time becomes a question for the jury, not a question for a motion for summary judgment. Didn't the plaintiff, Mr. Frechter, didn't the plaintiff say that this was an educated guess as to how much snow? He's making an estimation, an educated guess. It's very unlikely that a party who falls on snow is going to be able to measure the snow that they were falling in when they have an injury such as occurred with Mr. Janito. But the numbers from both the defendant Goldsmith and the other witnesses, Mr. Janito and Christopher Janito, indicate a number much higher than the two inches triggering event that's required by the contract. So, it sounds like we don't really know is what you're saying. And that's something that the jury needs to determine. Well, how will the jury determine that if your client doesn't even know? Well, he doesn't know the exact number, but he knows that it was more six inches, four inches is more than two inches. And that's also what Mr. Goldsmith had testified to. So, that by itself can come in as evidence for them to weigh against what K&R says and what the overarching weather service data report says was in the area. Would you say, Mr. Fechner, that by walking back and forth, I think as he and Christopher said, 50 to 80 times, that it created a situation that packed down whatever was there so that there's no idea of exactly how much snow was left? No, I don't think that necessarily is true. You can still tell from the area around the place where they had walked. So, I don't think that is necessarily the case at all. They still have been able to estimate from the area around the sides on the driveway leading up to the places where the grassy areas that were even higher. So, they can make those kind of estimations. The fact that he said an educated guess, that is basically an estimation. Estimations can be viewed by the jury to make a determination as to what the actual numbers were. In fact, assuming that you're correct, and it seems that the amount of snow that fell that day is a question of fact, I think I agree with you on that. Is that all you need to prove? Well, that's as far as where they breached their duty. To defeat summary judgment, is that all you need to prove? Yes, that is what we need to prove. Go ahead. Again, they improperly weighed that evidence. The drifting snow creates more issues as to whether or not what the amounts were. As for the pre-side crossing issue, the declaration created a mandatory duty. The language says the association shall furnish snow removal from the driveways and walkways on each duplex lot, including the lot on which the appellant fell. It's not permissive language. It does not say may furnish. It does not say will arrange for. It says shall furnish. This mandatory language mirrors Schoendijk v. Heil, which in Schoendijk, the condominium association required snow removal. There, the plaintiff fell on an icy sidewalk. The trial court granted summary judgment, finding no duty. The appellate court reversed, stating that by the defendant's declaration of condominium and bylaws, they had voluntarily assumed the duty of snow removal, not imposed on them by common law, and therefore they owed a duty to the plaintiff. Furnish means more than contract for. Pre-side argues that it satisfies its duty merely by hiring K&R, but this declaration is not saying pre-side shall contract for snow removal. It says it shall furnish it. Furnish means to supply or provide. It's an obligation to ensure residents are receiving the actual benefit of the snow removal services, not just that it appears on paper. The court accepts pre-side's interpretation. Any homeowner association could hire the cheapest, most incompetent contractor available, do no oversight, and escape all liability whether snow removal actually occurs. In this case, the pre-side's breach of duty of this contracted for provision in the declaration is a question for the jury. Whether pre-side breached its duty to furnish snow removal is a factual question. The evidence shows that fresh snow had accumulated between February 8 and 11. No snow removal occurred despite the alleged triggering events, and the appellant was injured as a result. The jury must consider whether pre-side breached its contractual duty by failing to ensure K&R performed, and whether that breach caused my client's injuries. Pre-side cites the claim stone versus professional property management, but that case is very distinguishable. In claim stone, there was ambiguity in what had been assumed. The lease said management would keep sidewalks clear, but the plaintiff fell on stairs. The court found there was no duty for stairs. Here, there is no ambiguity. The declarations expressly require snow removal from the driveways and walkways on each duplex lot. My client fell on the driveway. That's exactly what pre-side promised to furnish for snow removal. Moreover, claim stone itself recognizes that contractual duties create questions of fact about negligent performance. The court did not grant summary judgment solely based on hiring a contractor. It found no duty had been assumed in the first place. Appellant's injuries were entirely foreseeable. When snow accumulates on a driveway and is not removed, residents will encounter difficulty in using the driveway, including the risk of slipping and falling, which is exactly why pre-side's declaration imposed a duty to remove snow. Dennis Goldsmith, defendant, had himself testified that he was aware of icicle formations on the garage that would melt and cause water to freeze on the driveway. If the property owner knew of this condition, it is certainly foreseeable that such conditions could injure the residents. Again, had the snow been properly removed, the ice would have been visible and could have been avoided. Therefore, for these reasons, we respectfully request that the court reverse the trial court's order in granting summary judgment to both K&R Landscaping and Creekside Crossing and remand this case for a trial by jury. Thank you, counsel. To the panel members, any questions? Mr. Fechner, the plaintiff fell, you mentioned stairs. It's one to two feet from the garage to the ramp, correct? The stairs I was referring to was in the case cited, which is the shown sign. Okay, but not in the instant case? Not in the instant case, no. Okay, thank you. I was distinguishing the two. Okay, thank you. Justice Anderson? Counsel, my recollection of the case law, and I don't have them all in front of me, Greenwood v. Lue comes to mind. Okay. But my recollection of the case law is that even when people walk back and forth over the snow and leave rutted up uneven surface, even that's not considered unnatural, at least in and of itself. So how do you respond to that? Well, the snow itself may or may not be natural, but the ice underneath was testified to as dripping from the roofline, forming underneath the snow. And the snow, by virtue of not having been removed, obscured that unnatural accumulation of ice underneath. Any other questions? No. Thank you. Christopher, are you to go first? And how do I pronounce, is it Bunick? Yes. Yes, Your Honor. Thank you. Are you ready? Yes, I am. May it please the court, my name is Christopher Bunick, and I represent K&R Landscaping, Inc. And on behalf of K&R, we're requesting that summary judgment be affirmed and the plaintiff's appeal be denied. As plaintiff admitted, his client is guessing, or as he said, estimating the amount of snow on the driveway. And facts will demonstrate that there is no credible evidence to justify a triggering event for the contract, which K&R agreed to comply with, related to the Creekside Homeowners Association. Counsel, don't you have three witnesses who testified that there was more than two inches of snow? No. What do we have? And to that point, Your Honor, there's a significant difference between snow on the ground versus a snowfall event. If you look at the contract, the contract explicitly states, which is, this is a voluntary undertaking under the law, and we're required to comply with the contractual requirements. Under the law of the contract. And in this instance, the language dictates and identifies that there has to be a snowfall, which is the words used, or snowfall events. And that's obviously precipitation coming from the sky to the ground. That is the measure on which a duty will arise, not snow on the ground. And the contract further elaborates that K&R is not responsible for windblown snow or snow drifting. And so, in terms of, directly to your point, Your Honor, they primarily rely on Anthony Janito and Dennis Goldsmith, and to a lesser extent, Chris Janito, although I'll point out his testimony is really benign. In terms of Mr. Anthony Janito, I'll cite two facts in the record. On page C1723, Mr. Anthony Janito says he made an educated guess about the amount of snow on the driveway on the date of the incident. Page 1723, the record, he was guessing how much snow was on the ground on the day of the incident. On page C61698, he testified he slipped on ice. And I don't want to go backwards, but if we look at the plaintiff's complaint, the Second Amendment complaint, he, and we have to rely upon his complaint as it is when we file their summary judgment. In that complaint, he specifically, and only states, he slipped on ice and water. He never alleged he slipped on snow, and he further states that on his deposition on page 1698 where he says, I slipped on ice. He admitted, Mr. Anthony Janito, he didn't know where that ice came from on page C1721. He did state, he did observe on page C1721 that icicles were dripping in the area of the fall. He did not know how long the ice he slipped on had been present, and that's on page C1726. Is this case about Proxy McLeod? No, it's about a duty, whether it's triggered or not. Okay, but I'm just sticking with Mr. Janito's testimony to bring out other facts, but at no point does Mr. Anthony Janito ever state that there was an actual snowfall event of two inches or more between the date we last plowed on 2-4 and the date of the incident, 2-11. There's no testimony from any witness that there was a snowfall event of more than two inches. Again, the difference of Mr. Goldsmith saying there was seven to eight inches of snow on the grassy area in his yard is immaterial. Seven to eight inches of snow on the ground does not trigger the contract. There has to be a snowfall event. And snow doesn't get out of the ground unless it falls or drifts. That's a fair statement, isn't it? You know, we can look at the records, but surely... Am I wrong? My understanding is that if there was seven inches of snow in the grass, but two inches or so in the driveway, presumably that snow in the grass was there for prior snowfalls. Correct. Is it your position that because it's drifted and K&R is not responsible for drifting snow, that we're just to assume that it accumulated as a result of drifting? Correct. Well, you don't have to assume. We can look at the records. On 2-4, there was a triggering event. K&R went out there, cleared the driveway. Whether behind his house, on his roof, anywhere else, we're not responsible for that. We do the driveway, Your Honors. The driveway was cleared on 2-4, and there's no evidence to contradict that whatsoever. And from that day forward, the Weather Service and Mr. Ryan Manning from K&R testified that there was no triggering event after that date. Triggering event meaning snowfall. We can look at the weather reports, and I'll get to the weather reports in a second. On 2-5, 2-6, 2-7, 2-8, 2-8, there's testimony that there was snow. And that's why Mr. Manning provided an affidavit that the contract requires them to monitor the forecast. And if we look at the affidavit... Less than two minutes. Less than two minutes. Okay, thank you. The affidavit attaches the weather forecast, which says, the email that's from Mr. Woodstock to Mr. Manning, who's all at K&R, that although there was a forecast of 1-3 inches of snow for that day of 2-8, the actual anticipated snowfall was 0.5-0.8 inches. So they monitor it. They forecast it based on the weather data that's closest available station, which was in Plainfield, Illinois. So you actually have a station in the city where this is occurring. That's what they rely upon. Obviously, it would be ridiculous and no case law has ever held it. You have to rely on a weather service at the location where the incident occurred. Obviously, that's impossible. We're relying on Godover's... Your time is up. If you want to conclude. I apologize, Your Honor. There's a significant difference between a snowfall event and snow on the ground. In the close examination of the testimony, it'll show the plaintiff, Mr. Goldsmith, and Mr. Christianito do not testify to snowfall events. And they were guessing as to how much snow was on the ground when it happened. Thank you, Mr. Bunick. And Mara, is it Weinstein or Stein? Weinstein. Ms. Weinstein, if you'd like to proceed. I'm sorry, before you do, any questions from the panel? No further. Please proceed. Good afternoon, Your Honors. May it please the Court, Mara Weinstein for appellee, Creekside Crossing Homeowners Association. The lower court correctly granted Creekside Crossing's motion for summary judgment where the undisputed facts demonstrate that it did not own the premises where plaintiff fell. And it did not owe a duty to maintain or repair any part of that premises where the plaintiff fell pursuant to the Declaration and Bylaws. Furthermore, as to furnishing snow removal, Creekside duty, if any, comes from the Declaration, Section 3.03c. It does not come from how much snow fell on February 11th or the days prior. The Declaration requires the association to furnish snow removal. Creekside Crossing furnished it by contracting with K&R, a professional snow removal company. And the extent of any undertaking was to enter into that agreement for K&R to actually perform any snow removal. And it should be noted that Section 3.03c does not require any removal of ice, which is also consistent with the testimony in this case. And to mention a point that the appellant attorney made earlier, the analysis does not stop at how much snow was on the ground or fell on the date of the incident or the days prior. There's absolutely no evidence of an unnatural accumulation. There's absolutely no evidence of any aggravation of an unnatural accumulation. There's no notice to Creekside Crossing. And the testimony presented by Mr. Janito and his family members is complete speculation and conjecture. So starting with my first point is that Dennis Goldsmith admitted he was the owner of the property at issue. And the Declaration and bylaws clearly set forth that responsibility for maintenance, repair, and replacement of the driveways. It also sets forth that the homeowner Dennis Goldsmith is responsible for the eaves, gutters, downspouts, fascia, and flashing on the home. So any testimony or allegations regarding icicles and dripping and gutters, first of all, they're unsubstantiated and speculative. But second of all, Creekside Crossing has no duty to maintain or repair or replace any part of Mr. Goldsmith's home to the extent as it pertains to any alleged creation of icicles or dripping icicles. Moving on to the theory of voluntary undertaking of a duty. As mentioned earlier, the Declaration only calls for the furnishing of snow removal. It states nothing about the amount of snow. It states nothing about any triggering event. The scope of the undertaking is simply to furnish snow removal, which it did by entering into a contract, which is very typical for HOAs, especially of this size, to have a professional snow removal company to perform this work. There was never any undertaking in the Declaration to remove ice. And I cite heavily to the case of Claimstone, and it goes through the distinction of nonfeasance versus misfeasance. In the case of nonfeasance, where there is a failure by omission to perform the voluntary undertaking, and in the case of misfeasance, there's a negligence performance of the undertaking. And in nonfeasance, a plaintiff's reliance is essential. So here, there can be no demonstration of misfeasance where Creekside Crossing never performed any snow removal itself and never had an obligation to actually perform the snow removal services. It's clear that any snow removal services were either provided by K&R Landscaping pursuant to the contract, or the testimony shows that Dennis Smith himself was performing shoveling in his own driveway prior to the day of the incident and after the last triggering event. And as to nonfeasance, the appellant cannot show reliance. On the date of the incident, plaintiff started moving around 9 a.m. and he fell around 2 to 3 p.m. Having taken multiple trips back and forth before he fell, he admits he fell on packed snow that he walked over 20 to 30 times before. The plaintiff, Mr. Giannino, had no information about the snow removal contract with K&R and the terms of those contracts. And he did not review the declaration. Thus, he did not even know what the declaration stated in terms of furnishing any snow removal. And therefore, he cannot demonstrate any reliance based on prior performance when he didn't know the terms of performance and himself was clearly aware of the conditions prior to the fall. Claimstone, aside from looking at this nonfeasance and misfeasance, also discusses the contractual assumption of a duty. Here, that duty is limited to what is stated within the Declaration of Bylaws, which is furnishing the snow removal. And I wanted to direct the court's attention to some of the case law cited in that Claimstone case where the court said in Claimstone, the duty is only to refrain from negligently removing snow by creating or aggravating an unnatural accumulation of snow and ice. Further noting that the case law does not hold that a snow removal company may be liable to a third party for failure to perform snow removal as distinct from performing an affirmative act that creates an aggravation of an unnatural accumulation. Here, the record is clear that, in fact, on February 8th, it was Dennis Smith, Goldsmith, who was performing any snow removal in the driveway. And any allegations that K&R, for example, failed to comply with the contract does not create a duty owed to the plaintiff. Counsel, your time is up. And I just wanted to mention, I also set forth case law that the Creekside Crossing is not vicariously liable for any of the acts of K&R landscaping. The pleadings do not allege vicarious liability and it's clear that Creekside Crossing did not oversee or monitor any work. And ultimately, in the end, there was no notice of any condition whatsoever. And with that, it's requested that the lower court's opinion is affirmed. Thank you. Questions? None. No. All right. Thank you. Mr. Fechner, before you get started, what did Creekside do wrong? They hired a service to get rid of the snow. That's all they ever promised was to get rid of the snow. But they did not get rid of the snow. They didn't monitor them. They didn't make sure that they were coming out to the site when it was appropriate. Do you have any evidence of negligence on their part, past incidents where they didn't monitor, where they didn't make sure that the job was getting done? No, I do not. There's nothing in the record of that. All right. Thank you. As to the K&R's argument that the amount of snow is speculative, again, I point to Mr. Goldsmith's testimony that it was at least four inches of snow when he had gone out. Mr. Goldsmith was adverse to an appellant at the time of that testimony. Defense counsel says it's a triggering event as if there can be snow and then maybe there's a break in the snow. Maybe you have 1.9 inches of snow and then the sun comes out and there's a break in the snow. Does that end the triggering event? No, if it continues to snow and another 1.9 comes down or whatever, that is still the same triggering event, even though there may have been a meteorological break in the event. They didn't come out to clear that snow that came down. Any other termination would result in an absurd result. Even their own witness, Ryan Manning, didn't come out and measure the snow. He relied on the weather service data, which, as I've indicated, is inherently not reliable, especially as it relates to this particular location. Mr. Fechner, what was his obligation of the contract? Didn't he express to them that he would use a remote location and the weather service to determine when he was going to show up? That was what he had testified to, but that is something that the jury needs to determine whether or not that is sufficient under the terms of the contract to... Well, what did the contract say? Did the contract say anything about that? I do not recall seeing anything specifically about that in the contract. Thank you. So what metric should be used to determine whether or not snow has fallen? If it's not good enough to use a weather station, it sounds like you're telling me it should be how much snow landed on that particular property, right? Right, or even in the subdivision, if we're... And this also kind of dovetails back to my question about how much time do they have to do this, because every time it snows in the Chicago area, there's a seemingly infinite number of driveways, a seemingly infinite number of parking lots, and a seemingly infinite number of people who want their driveways plowed, and a finite number of trucks to do it. How would a snow removal company know whether they have a duty on Justice Heddle's driveway versus Justice Davenport's driveway versus my driveway? How would they know whether two inches of snow has fallen? Well, that is opening up a lot more, say, an infinite number of driveways. This isn't an infinite number of driveways. These are specific driveways that they had contracted for in this subdivision. But you're telling me that the metric to be used is how much snow fell in Mr. Janito's driveway. And the same duty would apply to his neighbor's driveway, assuming the same contractual obligations and so on. How are we to know how much snow fell in each person's driveway? It's a lot easier to make those determinations in a finite location as opposed to the playing field area as a whole. So what finite location would be used? Is it the subdivision? The subdivision. If we want to go that far, then yes, that's what they contracted for in the subdivision. A drive through the subdivision is not unduly burdensome under the terms of this contract to make sure that they're following their obligations. You don't think so. Justice Davenport, I couldn't hear you, but I could see your lips are moved. Mr. Fechner, how many homes are there in the Creekside Crossing HOA? I don't have that number off the top of my head. Thank you. And again, as to Creekside Crossing's obligations, again, Schoondyke is controlling here. They voluntarily assumed the duty. They promised to furnish snow removal, not just a contract for it. And when that didn't happen, that triggered their obligations and violated their dues. And that needs to be determined as to whether they breached that obligation by a jury at trial. Thank you, Mr. Fechner. Any other questions from the panel? No. Counsel, thank you very much for your arguments. We will take this case under advisement and issue an, excuse me, not an opinion, but a resolution or disposition in due course. Have a good day.